White, J.
The main controversy depends upon the ’ construction of the fourth item of the will. The question is whether the sale of the lands therein provided for, is directed to be made on the arrival of Samuel at the age of twenty-one years, and after the termination of the estate of the widow; or, whether the direction to sell is made contingent on the ividow’s estate terminating before Samuel’s arriving at age. The claim of the defendants is that the power of sale is thus contingent ; and, hence, that as Samuel became of age before the determination of the estate of the widow, the provision directing a sale and the division of the proceeds ceased, on his arriving at age, to be operative. They further claim that on the determination of the estate of the widow, the fee of the land passed to the children and grandson of the testator, under the devise of the “profits and benefits” of the real estate. We do not question that a devise of the rents and profits, or of the “ profits and benefits ” of lands, without qualification or limit* *22 ation, will impliedly carry the fee. But iu order to determine whether there is such qualification or limitation, we must look into the whole will, with the view of ascertaining the sense in which the terms -were used by the testator; and when such sense is ascertained to give it the effect intended. Such terms cannot bo held to carry the fee when it appears from other parts of the will that the fee is otherwise disposed of.
Whether the fee is otherwise disposed of, in the present case, depends upon the clause in item four, already .referred to, directing the land to be sold.
The clause not only directs a sale, but it makes a disposition of the proceeds of the sale. It provides that the proceeds of the sale shall be divided between the children and the grandchild as follows: To Seth, Samuel, and Oris, two shares each, and to the rest of the children one share each. According to the claim of the defendants, the bequests of two shares each to Seth, Samuel, and Oris are made contingent upon the estate of the widow terminating before Samuel became of age. If her estate ceased a day before he became of age, the land was to be sold, and Seth, Samuel, and Oris were each to have two shares of the proceeds. But if the widow’s estate should cease a day after Samuel became of age, there was to be no sale, and these bequests were not to take effect.
That such was not the intention of the testator seems to us to be clear. The object of the testator in postponing the sale until his wdfe’s widowhood should cease, was, it seems to us, to preserve to her, during her widowhood, the use of the land; and that the following is the true reading of the clause: UI direct that when my son Samuel Painter shall arrive at the age of twenty-one years, that the above-mentioned real estate shall bo sold, provided that my wife’s widowhood shall have ceased before that time,” that is, before the making of such sale.
The provision in the preceding clause, directing “ the profits and benefits ” of the land to be divided equally between his children and grandson, is not without effect upon. the construction we give to the subsequent clause. That provision was intended to dispose of the use or annual rents and profits of the land for the period that might intervene between the termina *23 tion of the widow’s estate and the sale, whether’ her estate ceased before or after Samuel became of age.
The direction to sell the land is imperative, and, it seems to us, the duty of making the sale is imposed on the executors. There is no discretion vested in them whether the lands shall be sold or not. The direction is that the real estate shall be sold, and the proceeds of the sale divided among the persons designated.
The bequest is of money, the proceeds of the sale of the land, and not of the land. The beneficiaries under the will take the property with the character impressed upon it by the testator. In the present case they take it as money, and in the character of pecuniary legatees; and the fact that Oris died be-, fore the time arrived for making the sale did not change the nature of the bequest. Ilis interest became vested at the taking effect of the will, and, on his death, his right passed to his |>ersonal representatives. Reading v. Blackwell, Baldw. C. Ct. 166 ; Rinehart v. Harrison's Ex’rs, Id. 177.
That the testator intended that the sale of the land and division'of the proceeds should be made by-the executors, is shown, we think, by the language used in the last clause of the will. lie appoints his son, Seth Painter, and his son-in-law, John Orimesey, his executors, and directs them “ to act and see the accomplishment of this my last will and testament, according to the true intent and meaning thereof.” It seems to us the testator could not have intended to devolve the making- of the sale and distribution of the proceeds upon his heirs; but that he regarded this as a matter to be accomplished by his executors. , •
As one of • the executors refused to act, the duty of executing the trust devolved, under the statute, upon the other executor. S, & C. Stat. 1629, §■ 65.
The remaining question is, whether there is a defect of' parties. As the interest vested in Oris is to be regarded as per-, sonal' estate, his personal representative ought to, be made a party. He died intestate; hence, if there has not been, there, ought to be an administrator appointed of his estate, so that, to the extent that may be necessary, the money belonging, to.. *24 his estate may be applied to the purposes of administration.
■ The interests acquired under the will by the other legatees having been, by them, vested in John Pow, he is the proper party to represent such interests.
If the property in question could be considered as land devised to Oris, it would have descended from him as ancestral property to those who were of the blood of the testator from, whom the estate came. But as it must be regarded as of the personal estate of Oris, while the heirs may have been proper, we are not prepared to say that they are necessary parties.
■ The demurrer on the ground that the petition does not show a cause of action is overruled ; and as to the ground of there being a defect of parties it is sustained.